## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. 3:26-cv-1278 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| STATE OF CONNECTICUT; THE OFFICE OF HIGHER EDUCATION; TIMOTHY LARSON, the Commissioner of Higher Education, in his official capacity; THE BOARD OF REGENTS FOR HIGHER EDUCATION; THE BOARD OF TRUSTEES OF THE UNIVERSITY OF CONNECTICUT, | |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive post-secondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Connecticut has ignored this federal law for over a decade.

2. In 2011, Connecticut passed House Bill 6390, codified at Conn Gen. Stat. § 10a-29(9), which extends eligibility for in-state tuition benefits at Connecticut postsecondary education institutions to illegal aliens residing in Connecticut, while requiring U.S. citizens from other states to pay a higher tuition rate.

3. Another Connecticut law, Conn. Gen. Stat. § 10a-161d, offers entitlement to institutional financial-aid eligibility for illegal aliens residing in Connecticut who meet certain eligibility criteria while failing to provide the same to U.S. citizens from other states.

4.      Yet another Connecticut law, Conn. Gen. Stat. § 10a-77(f), provides funding from the anticipated regional tuition revenue from the Connecticut State Community College for tuition waivers, tuition remissions, grants for educational expenses, and student employment for residents attending the Connecticut State Community College, including illegal aliens, while failing to provide similar provisions to U.S. citizens from other states.

5.      And still another Connecticut law, Conn. Gen. Stat. § 10a-173(d), rewards illegal aliens residing in Connecticut with eligibility for the Roberta B. Willis need-based grant without extending eligibility to U.S. citizens who do not.

6.      Finally, another Connecticut law, Conn. Gen. Stat. § 10a-19m, makes illegal aliens who meet a threshold of residency in Connecticut and maintain that status for at least five years eligible for student loan reimbursement payments while denying U.S. citizens not residing in Connecticut that same benefit.

7.      These statutes (collectively "the Challenged laws") constitute blatant unequal treatment favoring illegal aliens over U.S. citizens from other states.  Worse, such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added).  Accordingly, under the Supremacy Clause of our Nation's Constitution, Conn. Gen. Stat. §§ 10a-29(9), 10a-161d, 10a-77(f), § 10a-173(d), and 10a-19m are unconstitutional, and must yield to federal law.

8.      Courts have long recognized 8 U.S.C. § 1623's express preemptive effect.  *See, e.g., Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S.

2

citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

9.      Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g., United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states");*United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause).  This Court should do the same.

3

**JURISDICTION AND VENUE**

10.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

11.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district, and a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

12.    The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

13.    Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities.  Plaintiff enforces federal immigration laws through its executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

14.    Defendant State of Connecticut is a state of the United States.

15.    Defendant Office of Higher Education (the "OHE") is an executive branch agency of the State of Connecticut that administers a variety of programs related to postsecondary education including loans, grants, and scholarships.  *See* Conn. Gen. Stat. § 10a-1d(a). Specifically, OHE is charged with, *inter alia*, setting statewide financial-aid policy, adopting procedures by regulation for certain aid awards, reviewing and approving applications for specified financial-aid programs, and providing guidance to institutional financial-aid officers on student-aid matters.  Conn. Gen. Stat.  § 10a-161.

16. Defendant Timothy Larson is the Commissioner of OHE (the "Commissioner") and is sued in his official capacity. *See* Conn. Gen. Stat. § 10a-1d(b). The Commissioner is responsible for implementing the policies and directives of OHE. *Id.*

17. Defendant the Board of Regents for Higher Education (the "Board of Regents") is the governing body for Connecticut State Colleges and Universities ("CSCU"), the system of Connecticut public higher education institutions composed of the Connecticut State Community College, the Connecticut State University System, and Charter Oak State College. *See* Conn. Gen. Stat. § 10a-1a(a). The Board of Regents has the authority to, *inter alia*, "establish tuition and student fee policies for" CSCU. Conn. Gen. Stat. § 10a-6(a)(3); *see also* Conn. Gen. Stat. § 10a-77(a) (providing that the Board of Regents shall "fix fees for tuition at the Connecticut State Community College"); §10a-99(a) (same for Connecticut State University System).

18. Defendant the Board of Trustees of the University of Connecticut (the "Board of Trustees") is the governing body for the University of Connecticut ("UConn"). *See* Conn. Gen. Stat. § 10a-104(a), *et seq*. Conn. Gen. Stat. § 10a-104 provides that the Board of Trustees shall "[m]ake rules for the government of the university," "determine the general policies of the university," and "establish policies for the university system and for the individual institutions and campuses under its jurisdiction." Conn. Gen. Stat. §§ 10a-104(a)(1), (3). The Board of Trustees has the authority to, *inter alia*, "fix fees for tuition" at UConn. Conn. Gen. Stat. § 10a-105(a).

## FEDERAL LAW

19. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

20. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be

faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

21. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

22. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

23. Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant

6

Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id*.; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

24.    Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather [should] rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

25.    Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

26.    Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

27.    Accordingly, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*.

28.    Section 1623(a) provides that:

Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount,

duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

29.    On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. at § 2(a).

30.    On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. at § 5.

31.    These Orders reaffirm that state governments must not confer greater benefits to illegal aliens present in our Nation than to American citizens.  They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for American citizens.

## THE CONNECTICUT LAWS

## I.    Organization of Connecticut's Postsecondary Education

32.    Connecticut law creates a state system of public higher education and bifurcates the system between (1) UConn, which includes "all campuses thereof," and (2) CSCU, which includes

---

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/V5KX-DX6Q.
[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/83KY-N8Q9.

the state universities (Connecticut State University System); the Connecticut State Community College and "all campuses thereof"; and the Charter Oak State College. Conn. Gen. Stat. § 10a-1.

33.     UConn consists of the Storrs (main campus), Regional Campuses, UConn School of Law, and UConn Health. UConn's policy glossary defines "Storrs and Regional Campuses" to include "Storrs, Avery Point, Hartford, Stamford, and Waterbury."[3]

34.     CSCU consists of Central Connecticut State University ("Central Connecticut"), Eastern Connecticut State University ("Eastern Connecticut"), Southern Connecticut State University ("Southern Connecticut"), Western Connecticut State University ("Western Connecticut"), Charter Oak State College, and twelve Connecticut State Community College campuses.[4]

## II.     Connecticut Resident Tuition

35.     Connecticut, like most states, charges two separate tuition rates at its public institutions of higher education: resident and nonresident tuition. *See* Conn. Gen. Stat. § 10a-29(1) (contemplating that "[e]very person having such person's domicile in this state shall be entitled to classification as an in-state student for tuition purposes").

36.     Central, Eastern, Southern, and Western Connecticut charge a flat tuition rate of $6,998 to residents for the 2026–27 academic year while charging nonresidents $20,938.[5] Similarly, Connecticut State Community College set tuition rates for the 2026–27 academic year at $192 per credit hour for students with resident status while charging out-of-state students $578 per credit hour.[6] And UConn sets tuition rates for resident students at $709 per credit hour while

---

[3] *Policy Glossary*, Univ. of Conn., Off. of Univ. Compliance, https://perma.cc/8QHA-RR88.
[4] Campuses, Connecticut State Colls. & Univs., https://perma.cc/34GA-AXZ4.
[5] Bd. of Regents for Higher Educ., Conn. State Colls. & Univs., BR 25-088, *Resolution Concerning Tuition and Fees FY 2027*, Attach. A at 3–4 (Oct. 23, 2025).
[6] *Id.* Attach. B at 1.

charging nonresident students $1,654 for the 2026–27 academic year.[7]  The same structure—substantially lower in-state tuition rates for Connecticut residents and much higher out-of-state tuition rates for non-Connecticut residents—holds across UConn.

37.    Connecticut law rewards an illegal alien with eligibility for in-state tuition based on residence within the State, while denying eligibility for resident tuition rates to U.S. citizens who are not Connecticut residents.  *See* Conn. Gen. Stat. § 10a-29(9) ("Section 29(9)"); *see also* Conn. Pub. Act No. 11-43, § 1 (2011).

38.    Section 29(9) unequivocally makes illegal aliens living in Connecticut eligible to receive resident tuition in Connecticut.  Under Section 29(9), a person is "entitled to classification as an in-state student for tuition purposes" if the student:

(1) resides in this State;

(2) attended any educational institution in this State and completed at least two years of high school level education in this State;[8]

(3) graduated from a high school in this State, or the equivalent thereof; and

(4) is registered as an entering student or is currently enrolled in a public institution of higher education in this State.

Conn. Gen. Stat. § 10a-29(9).  Persons without lawful immigration status must also file an affidavit with the institution of higher education stating that the student has filed an application to legalize his immigration status or will file an application as soon as he is eligible to do so. *Id.*

39.    Accordingly, the tuition rate for illegal aliens in Connecticut who satisfy Section 29(9)'s criteria is the same tuition rate as other Connecticut residents. *Id.* However, a U.S. citizen

---

[7] 2026–2027 Undergraduate Students, Univ. of Conn. Off. of the Bursar, https://perma.cc/9WGT-GKVF.

[8] In 2015, Connecticut enacted SB 6844 to reduce the in-state high school level education completion requirement from four years to two years. *See* An Act Concerning In-State Tuition Eligibility, 2015 Conn. Acts 15-82 (Reg. Sess.) (codified as amended at § 10a-29(9)).

ineligible for in-state tuition under Section 29(9) due to residency requirements is required to pay the higher, nonresident tuition.

40.     Numerous colleges and universities in Connecticut rely on Section 29(9) when determining an application's residency classification and offering in-state tuition to illegal alien students. For example, UConn directly references Section 29(9)'s enacting and amending legislation for its policy on in-state tuition for illegal aliens.[9] So too does Connecticut State Community College,[10] Central,[11] Southern,[12] and Western Connecticut.[13]

41.     Put simply, Section 29(9)'s requirements confer preferential treatment to resident illegal aliens over American citizens on the basis of residence.

## III.    Institutional Financial Aid

42.     Connecticut also requires its public higher education institutions to reward illegal aliens with eligibility for institutional financial aid without providing a comparable eligibility guarantee to U.S. citizens not residing in Connecticut.

43.     Connecticut law requires the Board of Regents to set aside part of CSCU institutions' tuition revenue for financial aid.  Conn. Gen. Stat. § 10a-99(f) (Connecticut State Universities); Conn. Gen. Stat. § 10a-77(f) (Connecticut State Community College).  Likewise, the Board of Trustees must set aside a portion of UConn's tuition revenue for financial-aid awards. Conn. Gen. Stat. § 10a-105(g).

---

[9] Undocumented Students, Univ. of Conn. Undergraduate Admissions, https://perma.cc/Q7JS-8FVS.

[10] *See* Residency in Connecticut, Conn. State Cmty. Coll. Academic Catalog, https://perma.cc/QEF5-YZVK.

[11] Student Financial Resources, Central Conn. State Univ., https://perma.cc/4GC2-TBSD.

[12] In-State Tuition, S. Conn. State Univ., https://perma.cc/3VZH-BT6H.

[13] Undocumented Students, W. Conn. State Univ., Off. of Fin. Aid & Student Emp., https://perma.cc/66L4-M4HK.

A.  Section 10a-161d

44.     In 2018, Connecticut enacted Public Act 18-2—An Act Assisting Students without Legal Immigration Status with the Cost of College—which is codified at Conn. Gen. Stat. § 10a-161d ("Section 161d").  2018 Conn. Acts (Reg. Sess.); *see also* S.B. 4, 2018 Gen. Assemb., Feb. Sess. (Conn. 2018).

45.     Section 161d provides that:

> any eligible student without legal immigration status who files an affidavit with an institution of higher education pursuant to subdivision (9) of section 10a-29, stating that such eligible student has filed an application to legalize his or her immigration status, or will file such application as soon as he or she is eligible, shall be eligible to apply for and receive, to the extent permitted by federal law, institutional financial aid to attend a public institution of higher education in the state.

Conn. Gen. Stat. § 10a-161d(c).[14]

46.     For purposes of Section 161d, an "[e]ligible student without legal immigration status" is defined as "any person" who (1) is entitled to in-state student status under Section 29(9), (2) was younger than thirty one years of age on June 15, 2012, (3) "was sixteen years of age or younger when he or she arrived in the United States and has continuously resided in the United States since such arrival," and (4) has not been convicted of a felony.  Conn. Gen. Stat. § 10a-161d(a)(1).

47.     Connecticut law does not have a comparable requirement that public higher education institutions in Connecticut make institutional financial aid available to U.S. citizens residing outside of Connecticut.

---

[14] Section 161d's inclusion of a "savings clause" is not dispositive of the preemption analysis.  On its face, the savings clause is illusory given that the plain text of the statute facially violates Section 1623.  And upon information and belief, Connecticut relies on Section 161d to in fact provide postsecondary education benefits to illegal aliens based on residency requirements, in violation of federal law.

48.     Section 161d also requires the Board of Regents and the Board of Trustees to "establish procedures and develop forms" for eligible students without legal immigration status to "apply for and receive" institutional financial aid.  Conn. Gen. Stat. § 10a-161d(d).

49.     Upon information and belief, pursuant to Section 161d(d), the Board of Regents and the Board of Trustees have each established their own procedures and forms for their respective systems for evaluating the financial need of illegal aliens who are ineligible for the Free Application for Federal Student Aid ("FAFSA"), which has a lawful residence requirement.

50.     CSCU utilizes the "Aid Application for Connecticut Undocumented Students" ("AACTUS") for evaluating the financial need of illegal aliens who are otherwise ineligible for the FAFSA.[15]

51.     The AACTUS application includes an "Affidavit of Eligibility" which asks applicants to confirm that they meet nearly all[16] of Section 161d's requirements and Section 29(9)'s requirements, which includes the Connecticut residency requirement.  *Id*. at 3.

52.     UConn utilizes the "2026-2027 Institutional Aid Application" to enable illegal aliens to apply for institutional aid.[17]

53.     To be eligible for institutional financial aid, UConn requires illegal aliens to meet nearly all[18] of Section 161d's requirements and Section 29(9)'s requirements, which includes the Connecticut residency requirement. *Id.*

---

[15] Aid Application for Connecticut Undocumented Students (AACTUS) 2026–2027, Conn. State Colls. & Univs., https://perma.cc/3P7Q-RQQ9; *see also* Financial Aid, Conn. State Colls. & Univs., https://perma.cc/P8ZW-VAGB (providing financial-aid information for illegal aliens).

[16] The affidavit does not ask applicants to specify whether they have registered as an entering student or are enrolled at a public institution of higher education in Connecticut; however, AACTUS elsewhere notes that all students must be enrolled in a Title IV aid-eligible program to receive institutional aid.

[17] Undocumented Students, Univ. of Conn. Off. of Student Fin. Aid Servs., https://perma.cc-/CZK9-DLX3.

[18] Same omission as CSCU's AACTUS regarding registration or enrollment. *See supra* note 16. However, UConn's website states that in order for an undocumented student to apply for

54.     Put simply, Section 161d provides a statutory entitlement for institutional financial-aid eligibility to illegal aliens while failing to provide a comparable guarantee to U.S. citizens who are nonresidents of Connecticut, and the Board of Regents and the Board of Trustees enforce that framework through procedures and forms such as the AACTUS and Institutional Aid Application.

B.  Section 10-77(f)

55.     Additionally, Connecticut law mandates that the tuition set aside for institutional financial aid at Connecticut State Community College—a constituent part of CSCU—"shall be used to provide tuition waivers, tuition remissions, grants for educational expenses and student employment for *residents* enrolled in the [institution]."  Conn. Gen. Stat. § 10a-77(f) ("Section 77(f)") (emphasis added).

56.     Although "resident" is not a defined term in Section 77(f), Connecticut has created a specialized higher-education residency framework in Conn. Gen. Stat. §§ 10a-27 to 10a-31, which includes Section 29(9)'s standard for in-state residence.

57.     Because the Board of Regents, CSCU, and Connecticut State Community College do not provide a supplemental "resident" definition for purposes of institutional financial aid, upon information and belief, Connecticut State Community College utilizes Section 29(9)'s standard for in-state residence.

58.     Connecticut law does not have a comparable requirement that the tuition set aside for institutional financial aid at Connecticut State Community College, or any other subdivision of CSCU, shall be used to provide tuition waivers, tuition remissions, grants for educational expenses and student employment for U.S. citizens residing outside of Connecticut who are also enrolled in the institution.

---

institutional aid, he or she must provide an affidavit "with the institution they *are attending* about their intent to legalize their immigration status when they are eligible to do so."  *Id.* (emphasis added).

59. Section 77(f) therefore rewards illegal aliens who are enrolled at Connecticut State Community College and satisfy Section 29(9)'s requirements with eligibility for institutional financial aid while not providing that benefit to U.S. citizens residing outside of Connecticut.

C. Section 10a-173(d)

60. Connecticut also rewards illegal aliens residing in this State with eligibility for a state-funded, need-based scholarship while denying eligibility to U.S. citizen nonresidents of Connecticut.

61. Connecticut law directs OHE to establish the Roberta B. Willis Scholarship program to make financial aid available for eligible educational costs to eligible students enrolled at Connecticut's public and independent postsecondary institutions. Conn. Gen. Stat. § 10a-173(b).

62. "Eligible educational costs" include tuition, required fees, required books, and educational supplies. Conn. Gen. Stat. § 10a-173(a)(5).

63. The Roberta B. Willis Scholarship program is bifurcated into (1) the need and merit-based grant, and (2) the need-based grant. Conn. Gen. Stat. § 10a-173(b).

64. Conn. Gen. Stat. § 10a-173(d) ("Section 173(d)") provides that the need-based grant is available to any "eligible student" at any "public or independent institution of higher education." Conn. Gen. Stat. § 10a-173(d)(1).

65. "Eligible student" in turn is defined in Section 173 as, among other things, "a resident of the state." Conn. Gen. Stat. § 10a-173(a)(2).

66. "Public institution of higher education" is defined in Section 173 as "the constituent units of the state system of higher education identified in subdivisions (1) and (2) of section 10a-1, except the Connecticut State Community College." Conn. Gen. Stat. § 10a-173(a)(4).

Subdivisions (1) and (2) of section 10a-1 include UConn, CSCU, and all campuses of each. Conn. Gen. Stat. Ann. § 10a-1.

67.    "Independent institution of higher education," as defined in Section 173, "means a nonprofit institution established in this state (A) that has degree-granting authority in this state; (B) that has its main campus located in this state; (C) that is not included in the Connecticut system of public higher education; and (D) whose primary function is not the preparation of students for religious vocation." Conn. Gen. Stat. § 10a-173(a)(3).

68.    Connecticut law does not require eligible applicants for the need-based grant to be United States citizens or lawful residents.

69.    Although "resident of the state" is not a defined term in Conn. Gen. Stat. § 10a-173, Connecticut has created a specialized higher-education residency framework in Conn. Gen. Stat. §§ 10a-27 to 10a-31, including Section 29(9)'s determination of in-state student status for illegal aliens.

70.    Because OHE does not provide a supplemental "resident of the state" definition for the need-based grant, upon information and belief, OHE utilizes Section 29(9)'s standard for in-state residence.

71.    The Roberta B. Willis Scholarship program is funded through public funds made available to OHE. *See, e.g.,* Conn. Gen. Stat. § 10a-173(b) (contemplating that "[w]ithin available funds," the program "shall include a need and merit-based grant and a need-based grant"); 2026 Conn. Acts 26-68, § 1 (Reg. Sess.) (appropriating $41,288,637 to OHE for the Roberta B. Willis Scholarship Fund for FY 2026–27).

72.    Connecticut law requires the need and merit-based grant to be funded "at not less than twenty per cent but not more than thirty per cent of available funds or ten million dollars,

16

whichever is greater." Conn. Gen. Stat. § 10a-173(b). The need-based grant is funded "at up to eighty per cent of available funds." *Id.*

73.    Because Connecticut appropriated $41,288,637 for the Roberta B. Willis Scholarship Fund for fiscal year 2026–27, the need-based grant is funded by state dollars to at least $28,902,045.90. OHE allocates annual funds for the need-based grants to participating institutions of higher education. Conn. Gen. Stat. § 10a-173(d)(1). Such institutions award need-based grants to eligible students in an amount up to four thousand five hundred dollars. Conn. Gen. Stat. § 10a-173(d)(2).

74.    Connecticut law does not have a comparable need-based grant for U.S. citizens residing outside of Connecticut.

75.    Thus, on its face, Section 173(d) rewards illegal aliens residing in Connecticut with eligibility for a state-funded postsecondary education benefit while denying eligibility to that same benefit to U.S. citizens who do not reside in Connecticut.

## IV.    Student Loan Reimbursement

76.    Connecticut rewards illegal aliens residing in the State with eligibility for a student loan reimbursement program while denying eligibility to non-Connecticut-resident U.S. citizens.

77.    In 2023, Connecticut enacted Public Act 23-204, which created the Student Loan Reimbursement Program (the "SLRP"). 2023 Conn. Acts 23-204, § 174 (Reg. Sess.) (codified at Conn. Gen. Stat. § 10a-19m) ("Section 19m").

78.    Qualifying applicants apply to OHE, Conn. Gen. Stat. § 10a-19m(b), and the Commissioner then awards reimbursement grants on a "first-come, first-serve basis" to qualifying applicants, Conn. Gen. Stat. § 10a-19m(c)(1). OHE then reimburses each awardee for student loan payments paid during the preceding calendar year, not to exceed five thousand dollars, "provided

no person shall participate in the [SLRP] for more than four years or receive more than twenty thousand dollars in aggregate reimbursement." Conn. Gen. Stat. § 10a-19m(4).

79.    To be eligible for SLRP, an applicant must, among other things, be a resident of Connecticut as defined in Conn. Gen. Stat. § 12-701 ("Section 701") and must have held that status for at least five years. Conn. Gen. Stat. § 10a-19m(a)(2).

80.    Under Section 701, a "[r]esident of this state" is any natural person who is (1) domiciled in Connecticut, notwithstanding certain exceptions, or (2) is not domiciled in Connecticut "but maintains a permanent place of abode in this state for an aggregate of more than one hundred eighty-three days of the taxable year." Conn. Gen. Stat. § 12-701(a)(1).

81.    There is no U.S. citizenship requirement to qualify as a resident of Connecticut under Section 701.

82.    Connecticut law does not have a comparable student loan reimbursement payment program for U.S. citizens residing outside of Connecticut.

83.    Student loan reimbursement payments are postsecondary education benefits as contemplated in 8 U.S.C. § 1623(a).

84.    Thus, Section 19m rewards certain illegal aliens who satisfy Section 701's residency requirements with state-funded postsecondary education benefits while denying eligibility to U.S. citizens

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF CONN. GEN. STAT. § 10A-29(9) – TUITION)**

85.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

18

86.     The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

87.     The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

88.     Section 29(9) extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

89.     Accordingly, the challenged provision, Conn. Gen. Stat. § 10a-29(9), is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF CONN. GEN. STAT. § 10A-161d – FINANCIAL AID)**

90.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

91.     Section 161d extends eligibility for financial aid benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

92.     Accordingly, the challenged provision, Conn. Gen. Stat. § 10a-161d, is preempted and unconstitutional.

19

**COUNT III**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF CONN. GEN. STAT. § 10A-77(f) – FINANCIAL AID)**

93.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

94.    Section 77(f) extends eligibility for financial aid benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

95.    Accordingly, the challenged provision, Conn. Gen. Stat. § 10a-77(f), is preempted and unconstitutional.

**COUNT IV**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF CONN. GEN. STAT. § 10A-173(d) – FINANCIAL AID)**

96.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

97.    Section 173(d) extends eligibility for financial aid benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

98.    Accordingly, the challenged provision, Conn. Gen. Stat. § 10a-173(d), is preempted and unconstitutional.

**COUNT V**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF CONN. GEN. STAT. § 10A-19m– LOAN REIMBURSEMENT)**

99.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

100.    Section 19m extends eligibility for student loan reimbursement benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

101.    Accordingly, the challenged provision, Conn. Gen. Stat. § 10a-19m, is preempted and unconstitutional.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.    That this Court enter a judgment declaring Conn. Gen. Stat. §§ 10a-29(9), 10a-161d, 10a-77(f), 10a-173(d), and 10a-19m violate the Supremacy Clause because they extend eligibility for postsecondary education benefits to illegal aliens based on residency without offering the same to U.S. citizens of other states, and are therefore unconstitutional and invalid;

2.    That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Conn. Gen. Stat. §§ 10a-29(9), 10a-161d, 10a-77(f), 10a-173(d), and 10a-19m because they extend eligibility for postsecondary education benefits to illegal aliens based on residency without offering the same to U.S. citizens of other states through State law;

3.    That this Court award the United States its costs and fees in this action; and

4.    That this Court award any other relief it deems just and proper.

DATED: August 10, 2026

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

*s/ Luke A. Miller*
LUKE A. MILLER
United States Department of Justice
Trial Attorney
Civil Division
450 5th Street NW
Washington, DC 20001
Tel: (202) 598-7479
Email: Luke.Miller2@usdoj.gov

*Attorneys for the United States*

22