**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| USA,<br>*Plaintiff,* | : | CIVIL NO. 3:26-CV-01278 (VAB) |
| V. | : | |
| STATE OF CONNECTICUT<br>ET AL.,<br>*Defendants* | : | NOVEMBER 13, 2026 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

The Connecticut Constitution mandates "[t]he state shall maintain a system of higher education, including The University of Connecticut, which shall be dedicated to excellence in higher education." Conn. Const. Art. VIII., Sec. 2. It is firmly established that Connecticut has a legitimate *and substantial* interest in protecting its public universities and "the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441, 452-53 (1973). "A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents…. It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents." *Martinez v. Bynum*, 461 U.S. 321, 328-29 (1983).

For over two decades Connecticut has advanced its substantial interests and has chosen to extend its in-state tuition rate to students who are domiciled in Connecticut and some who are domiciled outside of Connecticut.

In furtherance of these interests and in accordance with the Court's requirements that residency requirements be "defined and uniformly applied," in 2011 Connecticut amended its definition of "status" for in-state tuition purposes to address certain Connecticut residents lacking legal immigration status. Connecticut Public Act 43 codified at Conn. Gen. Stat. § 10a-29(9). Connecticut law also provides for several other instances, discussed below, where U.S. citizens from other states may qualify for in-state tuition benefits. In addition, two of the statutes that plaintiff relies on do not provide any benefits to an alien who is *not lawfully present* in the United States. Accordingly, Connecticut's Tuition Laws do not conflict with 8 U.S.C. § 1623 and are not preempted.

For the reasons that follow, Defendants seek to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

First, the Complaint does not allege facts demonstrating plaintiff has sustained an injury as required to satisfy standing requirements. Plaintiff references four statutes and asserts in conclusory fashion that they are preempted by § 1623. But the Complaint does not include particularized factual allegations showing that the statutes have caused plaintiff injury.

Second, § 1623 does not preempt the challenged statutes because there are several categories of out-of-state students who can receive benefits under the statutes.

Third, the in-state tuition statutes do not violate § 1623 because they apply to out-of-state students within the meaning of § 1623.

Fourth, the OHE administered programs do not violate § 1623 because OHE's programs do not provide benefits to aliens who are *not lawfully present*.

## II. BACKGROUND

Plaintiff United States filed this Complaint on August 10, 2026, arguing that portions of Connecticut law concerning undocumented students in Connecticut violate 8 U.S.C. § 1623's restrictions and are thus preempted by operation of the Supremacy Clause. The named Defendants are the State of Connecticut, the Office of Higher Education, the Commissioner of the Office of Higher Education, the Board of Regents for Higher Education and the Board of Trustees for the University of Connecticut.

This lawsuit is one of many recent lawsuits filed by the United States against states that provide in-state tuition benefits to undocumented immigrants. *See* U.S. Department of Justice Press Release, "The Department of Justice Files Complaints Against Hawaii, DC, Arkansas, and Utah Over Preferential Treatment for Illegal Aliens," available at https://www.justice.gov/opa/pr/department-justice-files-complaints-against-hawaii-dc-arkansas-and-utah-over-preferential. The complaint sounds in five counts, each of which correlates to one state law. Specifically, the Plaintiff seeks a declaratory judgment and permanent injunction concerning Conn. Gen. Stat. §§ 10a-29(9) (count one), 10a-161d (count two), 10a-77(f) (count three), 10a-173(d) (count four) and 10a-19m (count five) (hereafter "Connecticut Tuition Laws"). Compl., ¶ 21.

## III. STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Although the court accepts all material factual allegations in the complaint as true, it cannot draw inferences

from the complaint favorable to the plaintiff or rely on conclusory statements in the Complaint. *See, e.g.*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430 (2021). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)).

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Williams v. Doe*, 639 Fed. Appx. 55, 56 (2d Cir. 2016) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this analysis, courts "must accept all allegations in the complaint as true, drawing all inferences in the non-moving party's favor." *Lafaro v. N.Y. Cardiothoracic Group, PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009). Legal conclusions, labels, and a mere recitation of the elements, however, are not entitled to the presumption of truth and are insufficient. *Ashcroft*, at 678-79.

## IV. ARGUMENT

### A. THE COMPLAINT DOES NOT ALLEGE FACTS DEMONSTRATING PLAINTIFF HAS BEEN HARMED AS REQUIRED FOR STANDING (ALL COUNTS)

The plaintiff "bears the burden of establishing standing as of the time [they] brought this lawsuit and maintaining it thereafter." *Carney v. Adams,* 592 U.S. 53, 59 (2020) (citations omitted). To do so, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a

favorable decision.'" *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014) (alteration in original) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Article III standing is a 'bedrock constitutional requirement that [the Supreme] Court has applied to all manner of important disputes.'" *Id.* at 378 (*quoting United States v. Texas,* 599 U.S. 670, 675 (2023)).

Put another way, the standing doctrine helps ensure that federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *Id.* (*quoting Allen v. Wright,* 468 U.S. 737, 760 (1984)). "Because standing is not dispensed in gross, a plaintiff must demonstrate standing for *each* claim that he presses and for *each* form of relief that he seeks (for example, injunctive relief and damages)." *Doe v. Hochul,* 139 F.4th 165, 185 (2d Cir. 2025) (alterations adopted, internal citations omitted).

All these requirements apply to the United States. *Food and Drug Administration v. All. For Hippocratic Med.,* 602 U.S. 367, 378-79 (2024). Additionally, to establish standing a sovereign plaintiff must show particularized and imminent injury to its "power to create and enforce a legal code" or its "demand for recognition from other sovereigns." *Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez, 458 U.S. 592, 601 (1982); see also Sanitary Dist. V. United States*, 266 U.S. 405, 425 (1925). While the United States has standing to assert an "injury to its sovereignty arising from a violation of its laws," *Vt. Agency of Nat. Res. V. U.S. ex rel. Stevens,* 529 U.S. 765, 771 (2000), the "mere existence of a preempted state law" does not "create[] a sovereign injury to the federal government." *United State v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal 2026); *see also United States v. City of Boston*, 833 F. Supp. 3d 30, 45 (D. Mass. 2026)(same).

In this case, the complaint is devoid of any identified harm or injury in fact. The United States cites to its inherent authority as a sovereign and its preemptive authority to control and conduct relations with foreign nations and to regulate immigration matters. *See* Compl. ¶¶ 21–

22. The complaint does not allege, however, that the preemption of its laws constitutes injury. Nor does it connect how Connecticut's Tuition Laws cause injury to the United States' ability to control and conduct relations with foreign nations and to regulate immigration matters. There are no allegations that the challenged provisions of Connecticut Law negatively affect international relations with any particular nation, nor that a ruling from this Court invalidating the laws would redress any such harm. *Cf. United States v. Texas*, 97 F.4th 268, 295–96 (5th Cir. 2024) (noting, inter alia, that the Mexican government "has already protested" concerning Texas bill barring unlawful entry and enabling state removal of noncitizens). There are no allegations that Connecticut's Tuition Laws attempt to control or in any way interfere with federal immigration operations. *Cf. Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (finding that bill banning private detention facilities in California would "requir[e] ICE to entirely transform its approach to detention in the state or else abandon its California facilities."). Indeed, any such suggestion would be implausible considering that the challenged statutes regulate eligibility for students to access Connecticut's public educational resources in a way explicitly permitted by federal law. *See* 8 U.S.C. §§ 1621(d), 1623.

Not only is there no actual harm alleged, but there is no imminence alleged either. As Plaintiff states in the complaint, Conn. Gen. Stat. § 10a-29(9) has been in place since 2011. Compl. ¶ 2. After over 15 years (and three different Presidents), the United States can point to no harm, demonstrating that this lawsuit is the result of a policy objection, not any actual or actionable harm. The rationale behind Article III standing requirements is in place to ensure that such policy disagreements are not adjudicated in our federal courts.

Given that no case or controversy is properly before this Court, the complaint should be dismissed in its entirety pursuant to Rule 12(b)(1).

### B. FEDERAL LAW DOES NOT PREEMPT THE CHALLENGED STATE LAWS

#### 1. Introduction.

Under the Supremacy Clause of the United States Constitution, state laws that are contrary to duly enacted federal law are invalid. *See* U.S. Const. art. VI, cl. 2.

Federal preemption may occur in one of three ways. First, "Congress can preempt state law expressly, by so stating in explicit terms on the face of a statute." *Motor Vehicle Mfr. Assoc. of the United States, Inc. v Abrams,* 899 F.2d 1315, 1318 (2d Cir. 1990) (citations omitted). Second, "in the absence of an express statement, Congress may preempt state law when it intends that federal law occupy a given field." *Id.* (citations omitted). Third, "even if Congress does not expressly preempt or intend to occupy the field, state law is nevertheless preempted if it actually conflicts with federal law; that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1318-19 (citations omitted). Finally, regardless of whether preemption is express or implied, the Supreme Court has explained, "in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (cleaned up).

Even if the United States has standing to pursue this case -- which it does not -- there is no preemption because the Connecticut's Tuition Laws do not conflict with the alleged federal law. Federalism, a central tenet of the Constitution, is grounded in the concept that both federal and state governments "have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398–99 (2012). The Constitution's structure of dual

sovereigns, like "the separation and independence of the coordinate branches of the Federal Government," was intended by the Founders as a further check against "the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458–59 (1991) (quoting The Federalist Papers No. 28, pp. 180–81 (Clinton Rossiter ed., 1961)). Where each sovereign enacts laws that conflict, the Constitution's Supremacy Clause operates as a "rule of decision," preempting the conflicting state law in favor of federal law. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018).

Plaintiff claims Connecticut's Tuition Laws are expressly preempted by federal law, specifically, 8 U.S.C. § 1623(a). Compl ¶ 8. Plaintiff's conclusory assertion is wrong.

§ 1623 provides:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C.S. § 1623(a).

The Plaintiff alleges in conclusory fashion that Connecticut's Tuition Laws provide "eligibility for in-state tuition benefits" to "illegal aliens residing in Connecticut, while requiring U.S. citizens from other states to pay a higher tuition rate" in violation of § 1623(a).[1] Compl ¶¶ 2, 7, 37. Contrary to this conclusory assertion, Connecticut's Tuition Laws contain *multiple* ways in which a U.S. citizen from another state qualifies for in-state tuition. *See id.* ¶ 39 ("a U.S. citizen ineligible for in-state tuition under Section 29(9) due to residency requirements is required to pay the higher, nonresident tuition."). As discussed below, Connecticut's Tuition

[1] In its complaint here the United States does not explicitly allege – as it has in other recently filed lawsuits against other states – that § 1623's use of the term "a" means "all." *See United States v. New York*, 1:26-cv-01527, Compl. ¶¶ 26, 51, 55, 59, 63.

Laws are not preempted because they make U.S. citizens from other states eligible for the same higher education benefits. *See infra*

Fundamentally, § 1623 expressly permits in-state tuition for undocumented students "on the basis of residence" so long as "*a citizen or national of the United States is eligible for such a benefit.*" (emphasis added). Explaining that "the caselaw is nearly unanimous on this point" the District Court in Minnesota held that "a citizen" in § 1623(a) means "one" or "any." *United States v. Walz*, 825 F. Supp. 3d 897, 912 (D. Minn. 2026) *appealed on* May 1, 2026 (26-1886), *citing Niz-Chavez v. Garland,* 593 U.S. 155, 164 (2021) ("The Dictionary Act does not transform every use of the singular 'a' into the plural 'several.' Instead, it tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things."). The District Court in the Eastern District of Virginia reached the same conclusion. *United States v. Virgina,* Civil Action No. 3:25cv1067, 2026 LX 561841, at *28 (E.D. Va. Oct. 5, 2026)("The correct interpretation is that "a" means "one or more," but not all.") *citing Walz,* 825 F. Supp. 3d at 911-12.

Several District Courts in this Circuit have come to the same conclusion about the definition of the word "a" in other contexts. *See, e.g., DaCosta v. Prudential Ins. Co. of Am., No. 10-CV-720 (JS)(ARL), 2010 U.S. Dist. LEXIS 120511, at *14-16 (E.D.N.Y. Nov. 12, 2010)*("In plain English, 'a' means 'one,' at least when used to qualify singular nouns such as 'opportunity' and 'review.'); *Touchtunes Music Corp. v. Rowe Int'l Corp*., 727 F. Supp. 2d 226, 236 (S.D.N.Y. 2010); *In re Miller*, 103 B.R. 65 (Bankr. N.D.N.Y. 1989) citing BLACK'S LAW DICTIONARY 1 (5th ed. 1979) ("'A' means 'one' or 'any', but less emphatically than either. It may mean one where only one is intended or it may mean any one of a great number. It is placed before nouns of the singular number, denoting an individual object or quality individualized.").In this case,

there are several situations in which “a” citizen from other states qualify can receive in-state tuition.

**2. Connecticut’s In-State Tuition Law is Not Preempted Because it Expressly Provides for In-State Tuition Rates for U.S. Citizens residing in Other States (Count One)**

Connecticut’s Tuition Laws provide several ways that U.S. citizens from other states can receive in-state tuition. Conn. Gen. Stat. § 10a-29 provides in pertinent part:

> (5) The spouse of any person who is classified or is eligible for classification as an in-state student shall be entitled to classification as an in-state student;
>
> (6) (A) A member of the armed forces, as defined in section 27-103, who is stationed in this state pursuant to military orders shall be entitled to classification as an in-state student.
>
> (B) The spouse of any person who is a member of the armed forces and stationed in this state pursuant to military orders shall be entitled to classification as an in-state student. The spouse, while in residence after the spouse's acceptance for matriculation at a constituent unit of the state system of higher education in a course of study leading to an associate, bachelor or advanced degree, shall not lose classification as an in-state student if the member of the armed forces is thereafter transferred on military orders;
>
> ….
>
> (8) A student who is from another state, territory or possession of the United States, the District of Columbia or the Commonwealth of Puerto Rico shall be classified as an in-state student, if such student (A) attended for three years and graduated from a high school in this state, and (B) was sponsored, housed and supported during attendance at such school by a program, such as the “A Better Chance” program, established as a nonprofit organization that raises charitable funds on the local level for the purpose of giving students who are minority students, are from single parent homes or live in poverty, an opportunity to attend school in a different environment. For purposes of this subdivision, “minority student” means a student whose racial ancestry is defined as other than white by the Bureau of Census of the United States Department of Commerce;

In addition to these statutory provisions, beginning in the Fall of 2017 Defendant Board of Regents for Higher Education authorized Western Connecticut State University (“WCSU”) began offering in-state tuition to residents of seven neighboring New York counties (Dutchess,

Putnam, Westchester, Orange, Rockland, Sullivan, and Ulster). *See* Exhibit A, attached. More recently, and currently, Defendant Board of Regents subsequently adopted a broader, systemwide tuition policy authorizing *all Connecticut State Universities* to charge New York and New Jersey students the same tuition rate as Connecticut residents. The resolution also authorized universities to extend the New England Board of Higher Education (NEBHE) rate to additional states, or even all states outside Connecticut, as an enrollment strategy. *See* Exhibit B, attached.

Specifically, the more recent Board resolution provides that:

- Connecticut State Universities may charge students from New York and New Jersey the same tuition rate as Connecticut residents.

- The universities may extend the NEBHE tuition rate to students from additional states or all states outside Connecticut.

WCSU has extended Connecticut resident tuition rates to students from New York and New Jersey, while offering the NEBHE rate to students from all other states outside Connecticut, New York, and New Jersey.

As a result of these statutory and policy initiatives, Connecticut Tuition Laws allows U.S. citizens from other states to be eligible for the same in-state tuition benefits as undocumented students. Connecticut's Tuition Laws are therefore not in conflict with 8 U.S.C. § 1623 and not preempted. Accordingly, Count One must be dismissed.

**3. The Challenged Financial Aid Benefits Are Available to U.S. Citizens Outside Connecticut and Therefore Are Not Preempted (Counts Two and Three)**

In Counts Two and Three of the Complaint the Plaintiff alleges that certain "post secondary education benefits" are preempted because, according to the Plaintiff, they are

statutorily available to undocumented Connecticut residents while being unavailable "to all U.S. citizens regardless of residency." Compl. ¶¶ 91 and 94. Earlier in their complaint the Plaintiff makes a more subtle claim. Concerning the institutional financial aid referenced in10a-161d, the Plaintiff merely alleges Connecticut does not "provide a comparable guarantee to U.S. citizens who are nonresidents of Connecticut." Compl. ¶ 54 Concerning the financial aid at community colleges referenced in 10-77(f), Plaintiff merely alleges Connecticut "does not have a comparable requirement … for U.S. citizens residing outside of Connecticut who are also enrolled in the institution." Compl. ¶ 58.

**a. Conn. Gen. Stat. § 10a-161d (Count Two)**

Section 10a-161d provides, in pertinent part:

> (c) On January 1, 2020, or the effective date of an Act of Congress that provides a pathway to United States citizenship for an eligible student without legal immigration status, whichever is earlier, and for each semester thereafter, in accordance with 8 USC 1621(d), any eligible student without legal immigration status who files an affidavit with an institution of higher education pursuant to subdivision (9) of section 10a-29, stating that such eligible student has filed an application to legalize his or her immigration status, or will file such application as soon as he or she is eligible, shall be eligible to apply for and receive, to the extent permitted by federal law, institutional financial aid to attend a public institution of higher education in the state.

"Eligible student without legal immigration status" is defined as follows:

> any person who (A) is entitled to classification as an in-state student for tuition purposes pursuant to subdivision (9) of section 10a-29, (B) was thirty years of age or younger on June 15, 2012, (C) was sixteen years of age or younger when he or she arrived in the United States and has continuously resided in the United States since such arrival, and (D) has not been convicted of a felony in this state or in another state;

Section 161d does not conflict with § 1623 because all students – including U.S. citizen students from other states – are eligible to apply for these "institutional financial aid" benefits.

*See* https://admissions.uconn.edu/cost-aid/scholarship/ ("Available to All Applicants"). *See supra.*

To the extent the Plaintiff alleges that 161d provides a "guarantee," that *legal conclusion* is completely unsupported and does not merit credit even at this stage, especially when Plaintiff has no factual basis for this assertion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(" the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") 161d is not an entitlement to benefits. It merely makes those students eligible for aid and does not compel such aid. *See* Conn. Gen. Stat. § 161d(c)(explaining that DACA recipients "shall be eligible to apply for and receive … institutional financial aid…."); Conn. Gen. Stat. § 10a-161d (e) ("Nothing in this section is intended to require or compel a public institution of higher education to match the amount of federal student financial aid a person who is eligible for institutional financial aid under subsection (a) of this section would receive if such person was eligible for such federal student financial aid.")

**b. Conn. Gen. Stat. § 10-77(f)(Count Three)**

Likewise, 10-77(f) does not conflict with § 1623. It provides:

> Said board shall set aside from the anticipated tuition revenue from the Connecticut State Community College, an amount not less than that required by said board's tuition policy. Such funds shall be used to provide tuition waivers, tuition remissions, grants for educational expenses and student employment for residents enrolled in the Connecticut State Community College as full or part-time matriculated students in a degree-granting program, or enrolled in a precollege remedial program, who demonstrate substantial financial need. Said board may also set aside from its anticipated tuition revenue an additional amount equal to one per cent of such tuition revenue for financial assistance for students who would not otherwise be eligible for financial assistance but who do have a financial need as determined by the college in accordance with this subsection. In determining such financial need, the college shall exclude the value of equity in the principal residence of the student's parents or legal guardians, or in the student's principal residence if the student is not considered to be a dependent of his parents or legal

> guardians and shall assess the earnings of a dependent student at the rate of thirty per cent.

Once again, the Plaintiff alleges – without support – both (1) that this provision provides tuition set aside for undocumented students while not providing a "comparable requirement," Compl. ¶ 58 and (2) that the tuition set aside program is "not available to all U.S. citizens regardless of residency," Compl. ¶ 94.

The Plaintiff concedes that resident is not a defined term in 77(f), but alleges that "Connecticut has created a specialized higher-education residency framework in Conn. Gen. Stat. §§ 10a-27 to 10a-31, which includes Section 29(9)'s standard for in-state residence." Compl. ¶ 56.

Once again, Plaintiff's argument fails because the tuition set aside program applies not only to those students covered under 10a-29(9) *but also to all the out-of-state U.S. citizens discussed supra*. *See* Conn. Gen. Stat. § 10a-29(5), (6) and (8). In addition, contrary to plaintiff's erroneous conclusory assertion, § 1623 does not require a set aside program be "available to *all* U.S. citizens regardless of residency." Compl. ¶ 94 (emphasis added). Indeed, § 1623 expressly states "a" citizen, not "all" citizens. 8 U.S.C. § 1623.

Section 6.5.3.1 (Tuition and Fee Waivers) of the Board of Trustees of Community-Technical Colleges Policy Manual provides:[2]

> The chancellor is directed to establish administrative and fiscal policies and procedures by which each Community College will be authorized to implement the waivers/remissions of tuition, grants for educational expenses, and student employment authorized by subsection (e) of section 10a-77 of the general statutes,

[2] While the Manual refers to 10a-77(e) instead of (f), it refers to the tuition revenue set-aside provision. P.A. 09-159 inserted a new subsection (e) dealing with veterans' Post-9/11 GI Bill benefits. As a result, the existing subsections(e) through (g) were redesignated (f) through (h). This is when the financial-aid set-aside moved from § 10a-77(e) to § 10a-77(f), effective July 1, 2009. Presumably, the Manual was not updated following the renumbering of the subsections.

> as amended, *provided that only those persons classified as in-state students under sections 10a-26 through 10a-31 of the general statutes* and enrolled as full-time or part-time matriculated students in a degree-granting program, or enrolled in a precollege remedial program, who demonstrate substantial financial need shall be eligible for tuition waivers, remissions, grants for educational expenses, and student employment under this policy.

Exhibit C (Emphasis added.)

Because "a citizen or national of the United States is eligible for" the tuition set aside 10-77(f) is not in conflict with 8 U.S.C. § 1623 and not preempted. Accordingly, Count 3 must be dismissed.

**4. OHE Administered Programs Do Not Violate § 1623 (Counts Four and Five).**

The Roberta B. Willis Scholarship Program (RWSP) and the Student Loan Reimbursement Program (SLRP) have not caused plaintiff injury because they do not violate 8 U.S.C. §1623. Section 1623 purports to proscribe providing postsecondary education benefits to "an alien who is *not lawfully present* in the United States…" "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added); Compl., ¶ 28. Here, the gravamen of plaintiff's claim is that the RWSP and SLRP reward "illegal aliens…." Compl., ¶¶ 5, 6, 60, 76. But as discussed below, neither the RWSP nor the SLRP provides benefits to "an alien who is not lawfully present" in the U.S. in violation of § 1623.

**a. The RWSP.**

Plaintiff's conclusory assertion that the RWSP provides undocumented aliens with RWSP benefits (Compl., ¶ 5) is legally unsupported by the allegations. *Id.*, ¶¶ 60-75. Fundamentally, statutory eligibility for RWSP need-based grants is based on the student aid index (SAI). Conn. Gen. Stat. § 10a-173(d). The SAI is "computed from a student's Free Application for Federal

Student Aid" (FAFSA). Conn. Gen. Stat. § 10a-173 (a)(2). Because undocumented alien students are ineligible to receive a social security number (SSN), and an SSN is required to complete the FAFSA, undocumented alien students cannot complete the FAFSA.[3] https://studentaid.gov/apply-for-aid/fafsa/filling-out/undocumented-students. So, by function of the statute, undocumented alien students are ineligible to receive RWSP benefits because completion of the FAFSA is required to obtain them.[4] Affidavit of Ram Aberasturia, ¶¶ 21(a), (b), 22 (Exhibit D).[5]

OHE ensures compliance with the RWSP statutory criteria in two ways. First, OHE requires institutions that receive RWSP funds to self-attest regarding compliance with these rules. *Id.*, ¶ 21(c). Second, OHE frequently audits the institutions to ensure that they are compliant with the RWSP program rules. *Id.*, ¶ 21(d). So, undocumented alien students do not intentionally or erroneously receive RWSP benefits.

**b. The SLRP.**

Plaintiff's conclusory allegation that the Conn. Gen. Stat. § "10a-19m rewards certain illegal aliens … with state-funded postsecondary education benefits …" (Compl., § 84) is legally

---

[3] A DACA recipient may have an SSN, but a DACA recipient is not "an alien who is not lawfully present in the United States…." 8 C.F.R. § 1.3(a)(3); U.S. Citizenship and Immigration Services, Humanitarian, Consideration of Deferred Action for Childhood Arrivals (DACA), Frequently Asked Questions, ("An individual who has received deferred action is authorized by DHS to be in the United States for the duration of the deferred action period. Deferred action recipients are also considered to be lawfully present as described in 8 C.F.R. sec. 1.3(a)(4)(vi) for purposes of eligibility for certain public benefits (such as certain Social Security benefits) during the period of deferred action.") available at: https://www.uscis.gov/humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions (accessed Nov. 2, 2026)

[4] A DACA recipient may complete the FAFA. But § 1623 does not apply to DACA students because they are not unlawfully present aliens. See fn. 1. So, DACA cases are not considered.

[5] "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016)

unsupported by the factual allegations in the Complaint. *Id*., ¶¶ 6, 76-84. Fundamentally, the SLRP statute does not expressly or impliedly allow aliens who are not lawfully present in the U.S. to receive SLRP benefits. The SLRP is a new program that started last year. Conn. Gen. Stat. § 10a-19m; P.A. 23-204 § 174 (enacting legislation passed in 2023, effective July 1, 2024, requiring implementation on or before January 1, 2025). Under the SLRP, eligible Connecticut residents can obtain reimbursement for eligible, previously paid postsecondary federal, state-sponsored, and/or private student loan payments. Conn. Gen. Stat. § 10a-19m(c)(4); Aberasturia Aff. ¶¶ 8, 9.

Several factors preclude undocumented aliens from receiving SLRP benefits. Fundamentally, undocumented aliens are not eligible to receive federal or state-sponsored student loans. Aberasturia Aff., ¶ 16(a), (b). In addition, as far as OHE knows, undocumented aliens are unable to obtain private student loans. *Id*., ¶ 16(c). So, an undocumented alien would not have any qualifying student loan payments for which to obtain reimbursement.

In addition, other factors prevent undocumented aliens from receiving SLRP benefits. Significantly, applicants must complete a W-9 and Vendor Form which includes their social security number. Aberasturia Aff., ¶ 13. Further, applicants must submit copies of their federal tax returns. Conn. Gen. Stat. § 10a-19m(a); Aberasturia Aff., ¶ 12.b. Accordingly, the SLRP statute does not provide undocumented aliens with SLRP benefits. Aberasturia, ¶ 22.

## V. CONCLUSION

For these reasons, the Court should grant the Motion.

DEFENDANTS,
STATE OF CONNECTICUT, OFFICE OF HIGHER EDUCATION, TIMOTHY LARSON IN HIS OFFICIAL CAPACITY, BOARD OF REGENTS FOR HIGHER EDUCATION, AND BOARD OF TRUSTEES OF THE UNIVERSITY OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Darren P. Cunningham
Darren P. Cunningham
Shawn Rutchick
Assistant Attorneys General
Federal Bar No. ct25380
Federal Bar No. ct24866
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5210
Fax: (860) 808-5385
darren.cunningham@ct.gov

**CERTIFICATION**

I hereby certify that on November 13, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *Darren P. Cunningham*
Darren P. Cunningham
Assistant Attorney General